## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| YAHMAD ROUNTREE, | ) | 3:25-CV-00043 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF BRIDGEPORT and | ) | |
| DETECTIVE ELIZABETH SANTORA, | ) | February 11, 2026 |
| in her individual capacity, | ) | |
| *Defendants*. | | |

## <u>RULING AND ORDER ON DEFENDANTS' MOTION TO DISMISS</u>

Sarala V. Nagala, United States District Judge.

Plaintiff Yahmad Rountree commenced this civil rights action against Defendants City of Bridgeport and Elizabeth Santora, a detective of the City of Bridgeport Police Department. The gravamen of Plaintiff's complaint is that he was subjected to malicious prosecution based on an affidavit Santora submitted to obtain an arrest warrant for him after a shooting in Bridgeport, Connecticut, on January 16, 2022. Plaintiff alleges that the affidavit included false information and omitted material facts, in violation of his federal and state constitutional rights. Defendants have moved to dismiss the complaint. Plaintiff opposes this motion.

For the reasons discussed below, Defendants' motion to dismiss is denied in part and granted in part. Specifically, Plaintiff's federal and state claims for malicious prosecution and his state constitutional claims may proceed, but his remaining claims are dismissed, without leave to amend.

## I.   FACTUAL BACKGROUND

The following facts are taken from the complaint and accepted as true for purposes of resolving Defendants' motions to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A. Plaintiff's Complaint

Plaintiff alleges that on January 16, 2022, he was at the Grill Two Bar in Bridgeport, Connecticut. Compl., ECF No. 1 ¶ 9. While there, he engaged in conversation with a woman. *Id.* ¶ 10. Prior to speaking to Plaintiff, the woman had spoken to another male at the bar; this male appeared annoyed that the woman later conversed with Plaintiff. *Id.* ¶¶ 11, 12. Sometime after talking to the woman, Plaintiff left the Grill Two Bar and walked toward his parked vehicle. *Id.* ¶ 13. After he left, two unidentified individuals shot firearms at him, releasing at least twenty-one rounds. *Id.* ¶¶ 14–15. Plaintiff in turn fired a firearm back in the direction of the two individuals who shot at him. *Id.* ¶ 16. Plaintiff alleges that he had a valid pistol permit and that he was legally allowed to carry his firearm. *Id.* ¶ 17.

Plaintiff was struck by multiple bullets fired by the two individuals and was transported to the hospital, where he received emergency care for his injuries. *Id.* ¶¶ 18–19. While Plaintiff was being treated for his gunshot wounds at the hospital, Defendant Detective Elizabeth Santora interviewed him. *Id.* ¶ 20. The Bridgeport Police Department was not able to identify the individuals who shot at Plaintiff. *Id.* ¶ 21. Plaintiff also alleges that his car had to be towed from the scene of the shooting, and was later determined to be inoperable. *Id.* ¶¶ 22–23.

One week after the incident, on or around January 26, 2022, Santora prepared an application for a warrant for Plaintiff's arrest, with a supporting affidavit, stating that Plaintiff violated both Conn. Gen. Stat. § 53a-63 (reckless endangerment in the first degree) and Conn. Gen. Stat. § 53-203 (unlawful discharge of a firearm). *Id.* ¶ 24. Plaintiff contends that the affidavit was flawed in the following respects: (i) it falsely stated that Plaintiff had ample time to get in his car and leave the scene of the shooting; (ii) it omitted the fact that Plaintiff's vehicle was towed from the premises; and (iii) it omitted the fact that upon being towed to the car dealership, Plaintiff's

vehicle was deemed inoperable. *Id.* ¶¶ 25–27. Plaintiff alleges that but for these material misstatements and omissions, there would not have been a sufficient basis for a magistrate judge to make a finding of probable cause as to the two offenses with which he was charged. *Id.* ¶ 37.

Plaintiff was eventually arrested for the two offenses. *Id.* ¶ 28. He alleges that he was prosecuted "to his financial detriment," as he had to retain an attorney to defend himself against the charges. *Id.* ¶ 29. On or around August 11, 2022, the State Attorney's Office agreed to *nolle* the charges against Plaintiff. *Id.* ¶ 30.

B.  The Affidavit

Defendants have attached to their motion a copy of the subject affidavit, dated January 26, 2022, which was submitted in support of the arrest warrant application. Aff., ECF No. 13-2 at 1–7. The Court discusses the import of the affidavit below.

The affidavit states in relevant part as follows. Two Bridgeport Police Department officers responded to the scene of the shooting, where they were flagged down by an individual later identified as Aaron Michael Davis to alert them that the victim of the shooting (Plaintiff) was in a parking garage. *See* ECF No. 13-2 at 3. The officers observed visible gunshot wounds to Plaintiff's neck and left leg. *Id.* Officers followed a trail of blood to a vehicle later identified as being registered to Plaintiff. *Id.* at 4. An officer observed a firearm in the vehicle, which was running. *Id.*

The shooting incident was captured on Bridgeport Fusion Center cameras. *Id.* The footage shows "parties firing at [Plaintiff] and [Plaintiff] firing back before [Plaintiff] flees toward his car." *Id.*

Santora had reported to the hospital to speak to Plaintiff. The affidavit describes the interview as follows, in relevant part:

8) At the hospital, I spoke with Rountree who was stable and able to talk, he told me he was inside the Grill Two Bar speaking with a girl named "Caitlin" who he stated he had hung out with once before. Before "Caitlin" began conversing with Rountree she was previously speaking with another male. Rountree stated the male now seemed annoyed that "Caitlin" was talking to him and began bumping into him on purpose as he walked by. Rountree stated he then left the bar and was sitting in his car "on Snap and texting" when he heard shots and his friends telling him to run. Rountree said he tried to drive away but when he put the car in drive it didn't move.

9) Rountree said he ran towards the parking garage without realizing he'd been shot, when [he] was inside the garage he realized he'd been shot. I asked if he knew who shot him and he stated it was the same male that was bumping into him at the bar. Rountree describes the male as light skinned black male dressed in all black, short hair cut, around 5'10.

10) While still at the hospital with Rountree, I was advised by Detectives on scene that there was a firearm found in Rountree's vehicle and that video footage showed Rountree had fired back. I asked Rountree if he had a firearm and he told me he had a "bronze-colored six shooter Glock" which is registered to him and was in his glove box. I then asked Rountree if he had fired his gun and he said he fired back once. Rountree has a valid Connecticut pistol permit #1153692, and is a Surety Bail Bond Agent, License # 002526888.

*Id.* at 4–5. The affidavit then proceeds to summarize video footage of the incident:

(Camera 30) At 22:22:32 hours, this camera view shows Rountree walking alone on Broad Street towards his parked car on State Street, he continues to look back as he is walking. A few seconds later three parties appear at the corner of John Street and Broad Street. One of the parties is Davis who appears to be trying to stop two males from continuing down Broad Street. The two males pass by Davis and he holds up his hands but continues to try and talk to them. Davis then begins to run towards Rountree's car and the two males appear to now be shooting from behind the white Jeep and a black sedan parked behind the Jeep. Davis is caught in the crossfire. One suspect is wearing a matching patterned top and bottom, possibly camouflage, the second suspect has a dark colored coat and light colored pants and a black balaclava mask.

(Camera 31) At 22:22:42 hours, this camera shows that Rountree is now running down Broad Street towards his car with [another individual], Falero[,] behind him. Rountree opens the driver's side door and reaches inside while Falero runs behind the car and then opens the left side rear door. Rountree starts to return back towards Broad Street but stops and turns towards Falero holding his arm out towards him. Falero then opens the driver's door and then closes it while Rountree walks back in the direction of Broad Street. A few seconds later Falero is seen ducking behind the car.

(Camera 31) Rountree is now on Broad Street and Davis is running towards him but continues past him until he reaches the car. A visible muzzle flash is coming from the firearm Rountree is pointing in the direction of the two males. Rountree then runs and gets in his car with Falero and Davis, the vehicle's lights come on but the car doesn't move, all three then exit the car and start running west on State Street.

(Camera 32) At 22:24:16 hours, this camera view shows Falero running down State Street towards the parking garage entrance, Rountree is following behind at a distance, and Davis is behind Rountree. The camera shows Rountree being helped by Davis and Falero into the garage who is now showing signs of being shot.

*Id.* at 5–6. The affidavit concludes with Santora's findings:

13) On January 18, 2022, I spoke with Rountree who was still in the hospital. Rountree stated he was not sure if he was undergoing any further surgery. I asked if doctors had found any bullets or fragments and he said no. It was initially determined by doctors on the night of the shooting that there was entrance and exit wounds.

14) It was determined that the five shell castings found in the location where Rountree was firing his gun belongs to the Glock firearm that is registered to him. A total of twenty-six spent shell castings were collected on scene.

15) After reviewing the video footage it is discovered that Rountree was not being shot at while sitting in [h]is car, and he did not fire back in self defense with one shot, as he claimed. Rountree *had ample time to get in his car and leave*, but he ran to his car to get his firearm from the glove box. He then heads back towards Broad Street, with his firearm, and begins firing at the two males with Davis caught in the crossfire.

Based on the aforementioned facts and circumstances, this affiant believes that probable cause exists for the issuance of an arrest warrant, charging Yahmad Rountree (DOB redacted) with the following charges:

C.G.S. 53a-63 – Reckless Endangerment in the First Degree
C.G.S. 53-203 – Unlawful Discharge of Firearms

*Id.* at 6–7 (emphasis added).

C. Plaintiff's Claims

As to Santora, Plaintiff brings a 42 U.S.C. § 1983 claim of malicious prosecution in violation of the Fourteen Amendment to the U.S. Constitution (Count One)[1] and several state claims, including malicious prosecution (Count Three), negligent infliction of emotional distress (Count Four), and violation of rights protected by Article First, Sections 7 and 9 of the Constitution of the State of Connecticut (Count Five).  Plaintiff also brings an indemnification claim against Defendant City of Bridgeport under Conn. Gen. Stat. § 7-465 (Count Six).  As relief, Plaintiff seeks compensatory and punitive damages and attorney's fees.

Defendants have moved to dismiss the complaint.  Defs.' Mot. to Dismiss, ECF No. 13. Plaintiff opposes Defendants' motion.  Pl.'s Opp. Br., ECF No. 23.  With leave of Court, Defendants filed a reply advancing a new argument regarding Plaintiff's state constitutional claims in Count Five.  Defs.' Reply Br., ECF No. 25.  Plaintiff was allowed to file a sur-reply.  Pl.'s Sur-Reply Br., ECF No. 29.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[1] Plaintiff's request for attorneys' fees is styled as a claim, *see* ECF No. 1 at 6 (describing request for attorney's fees as "Count Two"), but a request for attorneys' fees is not a proper claim, as Plaintiff's counsel conceded at oral argument.  Thus, the Court dismisses Count Two.

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.    DISCUSSION

Defendants' motion to dismiss is granted in part and denied in part. First, the Court finds that it can properly consider the arrest warrant affidavit to evaluate the sufficiency of Plaintiff's claims. Then, the Court concludes that Plaintiff's malicious prosecution claims and state constitutional claim survive dismissal, but his negligent infliction of emotional distress claim and indemnification claim must be dismissed.

### A.    Consideration of the Affidavit

As a preliminary matter, the Court finds that it may consider the affidavit Santora submitted in support of the arrest warrant application, a copy of which is annexed to Defendants' motion to dismiss.

When a district court is evaluating a 12(b)(6) motion, it ordinarily does not look beyond the complaint, documents attached to it, or documents incorporated by reference into it.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  But the Court may consider a document that is "integral" to the complaint, if the complaint "relies heavily upon its terms and effect."  *Id.* at 153 (internal citation omitted).  When deciding a motion to dismiss, a court may consider documents that are integral to the complaint even if the plaintiff does not attach or incorporate by reference such documents "because [the] plaintiff should not so easily be allowed to escape the consequences of [his] own failure."  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

In the context of assessing claims in which law enforcement officers sought and obtained a warrant, courts regularly consider the underlying affidavits and warrant applications when such documents are referenced in the complaint.  *See, e.g., Cayo v. Sefcik,* No. 14-CV-38, 2014 WL 3419578, at *5 n.10 (D. Conn. July 11, 2014) ("The Court can consider the contents of the arrest warrant application and its attachments because they are discussed extensively in the complaint.") (cleaned up); *Vessa v. City of White Plains,* No. 12-CV-6989, 2014 WL 1271230, at *4 n.9 (S.D.N.Y. Mar. 27, 2014) ("The Court may consider the Search Warrant Order, as it is clearly incorporated in the Amended Complaint by reference.  Indeed, the crux of Plaintiff's case is that Defendants wrongfully obtained the warrant at issue using fabricated and unsubstantiated information." (citations omitted)), *aff'd,* 588 F. App'x 9 (2d Cir. 2014); *Brodeur v. City of New York,* No. 99-CV-651, 2002 WL 424688, at *2 (S.D.N.Y. Mar. 18, 2002) (considering a search warrant application in assessing an unlawful search claim without converting a motion to dismiss to one for summary judgment).

Here, because Plaintiff alleges that the affidavit itself was defective and that without these flaws, there would not have been a finding of probable cause for issuance of the arrest warrant, the affidavit is integral to his claims. Additionally, the complaint relies on and makes multiple references to the affidavit, *see* ECF No. 1 ¶¶ 24–28, 35, and Plaintiff does not dispute the authenticity of the affidavit annexed to Defendants' motion. Thus, the Court will consider the affidavit in evaluating Defendants' motion to dismiss, without converting the motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d).

B.  Counts One and Three: Malicious Prosecution

The Court finds that Plaintiff has plausibly pleaded federal and state claims of malicious prosecution.

To bring a malicious prosecution claim under Section 1983, "a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (quoting *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002)). To state a malicious prosecution claim under Connecticut law, the plaintiff must show "(1) the defendant initiated or continued criminal proceedings against the plaintiff"; (2) "the criminal proceeding terminated in favor of the plaintiff"; (3) "the defendant acted without probable cause"; and (4) "the defendant acted with malice." *Id.* at 420. Additionally, to demonstrate the requisite Fourth Amendment violation, the plaintiff must show "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000).

Here, Defendants do not dispute that Plaintiff has shown a sufficient post-arraignment liberty restraint, as necessary to demonstrate a Fourth Amendment violation in this context. Thus, if Plaintiff states a plausible claim for malicious prosecution under Connecticut state law, his

claims in both Counts One and Three may proceed.  Defendants do not contest that Plaintiff has

plausibly alleged the first two elements of a malicious prosecution claim—that Santora initiated

criminal proceedings against Plaintiff and that these proceedings terminated in his favor.  But

Defendants do challenge the latter two elements of Plaintiff's malicious prosecution claim, arguing

that he has failed to plausibly allege that Santora acted without probable cause and that she acted

with malice.  Plaintiff, in turn, contends that but for Plaintiff's false statement in the affidavit that

he had sufficient time to return to his car, there would not have been a sufficient basis for a finding

of probable cause.[2]

### 1.  Probable Cause

Probable cause is a complete defense to malicious prosecution claims.  *Cornelio v. Conn.*,

32 F.4th 160, 178–79 (2d Cir. 2022).  Under both federal and Connecticut law, probable cause to

arrest exists when police officers have "knowledge or reasonably trustworthy information of facts

and circumstances that are sufficient to warrant a person of reasonable caution in the belief that

the person to be arrested has committed or is committing a crime."  *Walczyk v. Rio*, 496 F.3d 139,

156 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  Where, as here,

an arrest is made pursuant to a warrant issued by a neutral magistrate, probable cause is presumed.

*Walczyk*, 496 F.3d at 155–56 ("Ordinarily, an arrest or search pursuant to a warrant issued by a

neutral magistrate is presumed reasonable because such warrants may issue only upon a showing

---

[2] Although Plaintiff's complaint details three ways that the affidavit was allegedly defective, Plaintiff's opposition appears to focus primarily on the purported false statement that Plaintiff had sufficient time to return to his car. *See, e.g.*, ECF No. 20 at 2.  Plaintiff argues that this statement can be taken to negate that he acted in self-defense, since it suggests he had an opportunity to retreat from the incident before firing any shots.  The Court understands that this alleged misstatement is related to and overlaps with the other information Santora allegedly omitted from the affidavit: that the car was towed and later deemed inoperable.  But as to these latter facts, the complaint does not allege that Santora knew or recklessly disregarded them before submitting the arrest warrant affidavit.  If she did not know those facts or act in reckless disregard with respect to them, she cannot be faulted for failing to include them.  Thus, the Court focuses on Santora's statement that Plaintiff had ample time to return to his car and leave as the possible misrepresentation in the affidavit.

of probable cause.").  This presumption may be overcome, however, by a showing that "the officer submitting the probable cause affidavit 'knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit' or omitted material information, and that such false or omitted information was 'necessary to the finding of probable cause.'"  *Soares v. Conn.*, 8 F.3d 917, 920 (2d Cir. 1993) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870–71 (2d Cir. 1991)); *see also Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).

Here, Plaintiff was charged with two offenses: reckless endangerment in the first degree, in violation of Conn. Gen. Stat. § 53a-63, and unlawful discharge of a firearm, in violation of Conn. Gen. Stat. § 53-203.  The reckless endangerment statute provides that a "person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person." Conn. Gen. Stat. § 53a-63(a).  And the relevant firearm statute provides that "[a]ny person who intentionally, negligently or carelessly discharges any firearm in such a manner as to be likely to cause bodily injury or death to persons or domestic animals, or the wanton destruction of property, shall be guilty of a class C misdemeanor."  Conn. Gen. Stat. § 53-203(a).  Subsection (b) of this statute clarifies that the statute does not foreclose certain defenses, stating that "the provisions of subsection (a) of this section shall not be construed to prohibit the intentional discharge of a firearm for the purpose of lawful self-defense or lawful defense of another person."  *Id.* at § 53-203(b).

Additionally, Connecticut's self-defense statute imposes a duty to retreat before using deadly physical force, except in certain circumstances not relevant here. *See* Conn. Gen. Stat. § 53a-19.[3]

As Santora obtained a warrant from a judge for Plaintiff's arrest, there is a presumption that she had probable cause for the arrest. But based on a review of the affidavit and the allegations in the complaint, the Court finds that Plaintiff has pleaded sufficient facts to overcome the presumption of probable cause, such that his malicious prosecution claims may proceed. Plaintiff plausibly alleges that Santora falsely stated in her affidavit that Plaintiff had ample time to get in his car and leave, and that this statement was necessary for a finding of probable cause.

A brief review of the affidavit is instructive. Based on the affidavit's summary of the video footage of the incident, Plaintiff walked toward his car at 22:22:32 hours, and within a few seconds, two men appeared and shot at him and Davis. ECF No. 13-1 at 5. Ten seconds later, Plaintiff ran down Broad Street towards his car, opened the driver's side door and reached inside the car. *Id.* at 6. Plaintiff then started to go back towards Broad Street, but stopped and turned toward Falero, who was holding his arm out toward him. *Id.* Falero then opened the driver's door of the car and

---

[3] The self-defense statute provides, in relevant part: (a) Except as provided in subsections (b) and (c) of this section, **a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose**; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

(b) Notwithstanding the provisions of subsection (a) of this section, **a person is not justified in using deadly physical force upon another person if he or she knows that he or she can avoid the necessity of using such force with complete safety (1) by retreating**, except that the actor shall not be required to retreat if he or she is in his or her dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he or she is a peace officer or a private person assisting such peace officer at his or her direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he or she abstain from performing an act which he or she is not obliged to perform. (Emphases added.)

closed it, while Plaintiff walked back in the direction of Broad Street. *Id.* At an unspecified time, Plaintiff was then seen on Broad Street pointing his firearm in the direction of the two males, and the video shows a visible muzzle flash from Plaintiff's firearm. *Id.* Plaintiff, Falero and Davis then ran to and entered Plaintiff's vehicle; the vehicle's lights came on, but the car did not move, and all three men exited the car and ran west on State Street. *Id.* Finally, at 22:24:16 hours, the footage showed Plaintiff and Falero running from the car down State Street toward the parking garage entrance. *Id.* The entire event appears to have lasted approximately three minutes.

Although Santora states that Plaintiff had ample time to get to his car and leave prior to retrieving his gun, her own observations of the video footage reflect that within this three-minute timeframe, Plaintiff and his friends ran to his car and the lights turned on, but the car did not move. This fact weighs on whether Plaintiff had the ability to retreat safely from the scene, as required to invoke self-defense under Connecticut law—which could have negated any finding of probable cause for the two offenses with which he was charged. *See Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003) (noting that defenses that "negate the existence of a crime should similarly negate probable cause"); *State v. Espinal*, 208 Conn. App. 369, 418 (2021) (under Connecticut law, self-defense is a complete defense in a criminal proceeding) (citation omitted). To be sure, police officers have no obligation to investigate a suspect's defense before arresting him. *Jocks,* 316 F.3d at 135 (citing *Ricciuti v. N.Y. City Transit Auth.*, 124 F.3d 123, 128 (2d Cir.1997) ("The officer was not required to make a full investigation into plaintiff's state of mind prior to taking action. Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.")). Thus, Santora had no obligation to explore any theories justifying Plaintiff's conduct.

However, taking the allegations in the complaint as true, as the Court must at this stage, the Court finds that Plaintiff's allegations that the affidavit contained a false statement and omitted material facts necessary for a finding of probable cause are sufficient to demonstrate that Santora acted with reckless disregard for the truth. By attesting that Plaintiff had "ample time to get his car and leave," ECF No. 13-2 at 6, Santora left the judge who issued the warrant with the impression that any claim to self-defense would fail—which may not necessarily have been the case, if Plaintiff in fact could not have retreated by driving away because his car was inoperable.

Defendants advance three arguments why the judge who issued the warrant would not have been misled by the statement that Plaintiff had ample time to leave, but none succeed. First, they note that Santora included Plaintiff's statement to her during the interview that he had tried to drive away but the car would not move, contending that this statement provided information to the judge that the car was inoperable. But the affidavit's recitation of the video strongly implies that Plaintiff's statements during his interview were untrue; for instance, it appears apparent from Santora's recitation of the video footage that Plaintiff was not "sitting in his car 'on Snap and texting' when he heard shots and his friends telling him to run." ECF No. 13-2 at 4. Santora also specifically states that Plaintiff "did not fire back in self defense with one shot, as he claimed." *Id.* at 6. Insofar as the affidavit intentionally casts doubt on Plaintiff's story, it could also be read to suggest that he may not have been telling the truth about the car being inoperable. Second, Defendants claim that Santora's observation that the video depicts the car's lights turning on, without it moving, would have put the judge on notice of the car's inoperability. The affidavit, however, simply states that the car "doesn't move"—not that it couldn't move. Thus, without more, the statement that the car did not move is insufficient. Finally, although Defendants argue

that Plaintiff could also have retreated on foot, the affidavit certainly suggests that he could have, and should have, retreated by car.

Thus, the Court concludes that Plaintiff's allegations are sufficient to overcome the presumption of probable cause traditionally afforded to warrants authorized by magistrate judges—at least for purposes of a motion to dismiss. *See Soares*, 8 F.3d at 920. Defendants' motion is therefore denied on this ground, without prejudice to renewal after the issue is further developed during discovery.

### 2. *Malice*

The Court also finds that Plaintiff has alleged sufficient facts to demonstrate that Santora acted with malice, for purposes of a malicious prosecution claim. "A party may demonstrate malice by showing that a prosecution was undertaken 'from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff,' including initiating proceedings without probable cause." *Turner v. Boyle*, 116 F. Supp. 3d 58, 85 (D. Conn. 2015) (quoting *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996)). A lack of probable cause generally creates an inference of malice. *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010) (citing *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003)); *see also Ricciuti*, 124 F.3d at 131. Thus, as the Court has found above that Plaintiff's allegations are sufficient to suggest a lack of probable cause for the arrest warrant, they are also sufficient to infer that Santora acted with malice, for purposes of a motion to dismiss. Plaintiff's state and federal malicious prosecution claims are therefore sufficient to proceed.

### 3. *Qualified Immunity*

The Court also cannot conclude that Santora is entitled to qualified immunity at this stage.

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Court has concluded above that Plaintiff has adequately alleged Santora lacked probable cause to arrest Plaintiff, based on the potential misrepresentation in the warrant affidavit about having ample time to leave and drive away.  But Santora may be entitled to qualified immunity if she can establish that she had *arguable* probable cause to arrest the plaintiff, which requires a showing that "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (internal quotation marks and citations omitted).

Where a defendant raises qualified immunity in a Rule 12(b)(6) motion, she must demonstrate that the facts establishing arguable probable cause are clear from the face of the complaint, and the motion may be granted "only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'"  *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)); *see also Lumpkin v. Brehm*, 230 F. Supp. 3d 178, 184 (S.D.N.Y. 2017) (citing *Rahman v. Schriro*, 22 F. Supp. 3d, 305, 316 (S.D.N.Y. 2014)).  This is a "formidable hurdle." *McKenna*, 386 F.3d at 434.

Considering only the complaint and drawing all reasonable inferences in Plaintiff's favor—including those that defeat the immunity defense, *id.* at 436—the Court cannot conclude that Santora has demonstrated arguable probable cause at this stage.  Based on the complaint, Santora "falsely stated" that Plaintiff had ample time to get in his car and leave the area of the shooting—*i.e.*, to retreat, negating a self-defense argument.  ECF No. 1 ¶ 25.  If Santora's statement in the affidavit indeed was false, it would not have been objectively reasonable for her to believe that

probable cause existed, and officers of reasonable competence would not disagree about whether the probable cause test was met.  And, if the facts alleged in the complaint are proven true, Plaintiff may be entitled to relief on his malicious prosecution claims under federal and state law.  Thus, Santora is not entitled to qualified immunity at this juncture, though she is free to renew her argument at a later stage of the case, after the facts are more fully developed.

C.  Count Four: Negligent Infliction of Emotional Distress

The Court dismisses Count Four, Plaintiff's claim of negligent infliction of emotional distress, as Plaintiff conceded at oral argument that this claim is barred by governmental immunity and should be dismissed.  *See* ECF No. 13-1 at 23–26 (Defendants' briefing arguing for application of governmental immunity to this claim).

D.  Count Five: Connecticut Constitutional Claim

The Court concludes that Count Five, Plaintiff's state constitutional claim, survives dismissal.

Plaintiff contends that Defendants violated his rights under Article First, §§ 7 and 9 of the Connecticut Constitution.  Article First, § 7 provides that "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures . . ." Conn. Const. art. I, § 7.  Article First, § 9 provides that "[n]o person shall be arrested, detained or punished, except in cases clearly warranted by law."  *Id.* at § 9.  As this District has observed:

> In *Binette v. Sabo*, [244 Conn. 23, 31 (1998)], the Connecticut Supreme Court recognized "a common-law cause of action under article first, §§ 7 and 9, of [the state constitution] for the policy reasons articulated in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 [1971]." 244 Conn. 23, 32 (1998); *see also Lopez v. Smiley*, 375 F. Supp. 2d 19, 23 (D. Conn. 2005) ("*Binette* created a narrow cause of action for money damages under the Article First, §§ 7 and 9 of the Connecticut Constitution for illegal searches and seizures of private homes by police officers, a cause of action that is equivalent to the federal *Bivens* action under the Fourth Amendment to the United States Constitution.").

*Ramos v. Town of E. Hartford*, No. 3:16-CV-166 (VLB), 2019 WL 2785594, at *19 (D. Conn. July 2, 2019). In *Binette*, two plaintiffs filed suit for compensatory and punitive damages against a police chief and police officer who had entered their home without permission or a warrant. *Binette*, 244 Conn. at 26. The complaint there contained allegations that the police chief threatened one plaintiff with arrest and imprisonment and pushed her, causing her to fall over a table and against a wall. *Id.* The complaint further alleged that the police chief repeatedly slammed the other plaintiff's head against a car, while the police officer struck him in the head and kicked him while he was lying on the ground experiencing an epileptic seizure. *Id.* In addition to their state constitutional claims, the plaintiffs alleged claims for wrongful arrest and other common law torts. *Id.* at 27. The Connecticut Supreme Court allowed the plaintiffs' claim for violations of Article First, §§ 7 and 9 of the state constitution to proceed. *Id.* at 49–50.

Defendants argue in their reply brief that while *Binette* recognized a private cause of action for money damages for violations of Article First, §§ 7 and 9, the Connecticut legislature recently passed an Act Concerning Police Accountability (the "Act"), Conn. Gen. Stat. § 52-571k, which Defendants claim displaces the *Binette* remedy with respect to claims against police officers for violations of state constitutional rights. The Act, passed in 2020, provides that "no police officer, acting alone or in conspiracy with another, shall deprive any person or class of persons of the equal protection of the laws of this state, or of the equal privileges and immunities under the laws of this state, including, without limitation, the protections, privileges and immunities guaranteed under article first of the Constitution of the state." The statute authorizes "any person aggrieved by a violation of subsection (b) of this section" to bring a civil action for equitable relief or damages, no later than one year after the date on which the cause of action accrues. Conn. Gen. Stat. § 52-571k(c) and (g). According to Defendants, Plaintiff was required to bring his state constitutional

claim exclusively under this statute and any such claim would be untimely, as the alleged events occurred on January 16, 2022, but Plaintiff did not commence this action until approximately three years later, on January 9, 2025.

The Court rejects this ground of Defendants' motion. The parties have not provided—and the Court's independent search has not revealed—any state or federal cases substantively analyzing the Act or otherwise discussing whether the statute displaces the remedy afforded through *Binette*. As one court in this District recently noted, the elements of a claim brought pursuant to Conn. Gen. Stat. § 52-571k are "unclear." *Thompson v. Beausoleil*, No. 3:23-CV-1677 (OAW), 2025 WL 437303, at *4 (D. Conn. Feb. 7, 2025) (declining to exercise supplemental jurisdiction over state constitutional claims brought pursuant to Conn. Gen. Stat. § 52-571k, as it would require the federal court "to define the contours of a novel state constitutional entitlement").[4]

It is true that part of the Connecticut Supreme Court's rationale for creating an independent constitutional tort remedy in *Binette* was that the legislature had not "expressed its preference for an alternative statutory or administrative remedy." *Binette*, 244 Conn. at 45–46. Now, with passage of the Act, the legislature arguably has done so. But *Binette* also discussed other reasons for permitting an independent constitutional tort claim. *Id.* at 49 ("we believe that a state *Bivens*[5]-type action is an appropriate remedy for the unique harm likely to result from a violation of article first, §§ 7 and 9, because, unlike the other remedies available to the plaintiffs, a *Bivens*-type remedy comprehends both the fundamental nature of the rights protected by those constitutional provisions and the special significance of the duty breached by their violation"). In the absence of any state

---

[4] The only other federal case to have addressed Conn. Gen. Stat. § 52-571k is *Arias v. East Hartford*, No. 3:20-CV-00895 (JCH), 2021 WL 3268846, at *9 n.6 (D. Conn. July 30, 2021), which merely noted that the Connecticut legislature created a private cause of action through this statute to apply to incidents occurring on or after July 1, 2021.
[5] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

or federal authority stating that Conn. Gen. Stat. § 52-571k displaces the protections recognized in *Binette*, the Court will not be the first to hold that it does.[6]

At oral argument, both counsel suggested that the Court should certify the question of whether the Act fully preempts claims against police officers brought under article first, §§ 7 and 9 and renders such claims subject to the Act's one-year statute of limitations.[7]  Under Connecticut law, "the Supreme Court may answer a question of law certified to it by a court of the United States or by the highest court of another state or of a tribe, if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state."  Conn. Gen. Stat. § 51-199b(d).  In determining whether to certify a question to the Supreme Court, district courts in the District of Connecticut consider "(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation."  *Cerame v. Lamont*, No. 3:21-CV-1508 (JCH), 2022 WL 2834632, at *2 (D. Conn. July 20, 2022) (internal citation omitted), *certified question answered*, 346 Conn. 422 (2023).  Here, the Court acknowledges that there is an absence of dispositive state court decisions on this issue and that the issue raises an important question—one that might recur in civil rights litigation.  Notwithstanding, the Court is not convinced that certification is appropriate *for this case* because certification of this issue will likely not resolve the litigation, given that Plaintiff's federal constitutional claim will proceed, regardless of any decision by the Connecticut Supreme Court on a certified question.

---

[6] The Court also notes that Defendants' argument on this issue is approximately one-and-a-half pages long, inclusive of footnotes.  *See* ECF No. 25 at 8–9.  Plaintiff, for his part, does not address the argument at all in his sur-reply brief.  *See* ECF No. 29.  Thus, the parties' submissions are insufficiently developed for the Court to meaningfully address this issue.

[7] The statute of limitations for state constitutional claims is otherwise three years.  *See Lawrence v. Town of Westport*, No. 3:22-CV-1598 (AWT), 2024 WL 3455828, at *7 (D. Conn. July 18, 2024) (citing cases).

As the Court has no basis to assume that a cause of action under Article First, §§ 7 and 9 would no longer be cognizable after passage of the police accountability law, the Court next addresses whether Plaintiff has plausibly stated such a claim. It concludes he has.

Defendants contend that, even if a *Binette* claim is available to Plaintiff, he has not demonstrated that Santora engaged in "egregious" conduct, which they claim is necessary to state a *Binette* claim. While it is unclear whether the Connecticut Supreme Court intended for "egregious" conduct to constitute an element for these types of claims, courts applying *Binette* have generally examined whether the factual allegations rise to the level of egregious conduct necessary to state a valid constitutional violation, and have often recognized *Binette* claims where officers engaged in unlawful searches and seizures and seriously injured individuals. *See Ramos*, 2019 WL 2785594, at *20 (collecting cases); *Martin v. Brady*, 64 Conn. App. 433, 440–42 (2001) (analyzing whether the facts alleged in the plaintiff's complaint "are sufficiently egregious to allow him to pursue a separate tort action against the defendants" under *Binette*).

The Court recognizes that two judges of this District have held that *Binette* claims may proceed even if the police conduct is not alleged to be egregious. *See Gilbert v. Newton*, No. 3:13-CV-1715 (JCH), 2015 WL 3755955, at *2–3 (D. Conn. June 15, 2015); *Waller v. City of Middletown,* No. 3:11-CV-1322 (CSH), 2014 WL 4843681, at *15 (D. Conn. Sept. 29, 2014), *vacated in part on other grounds on reconsideration*, 89 F. Supp. 3d 279 (D. Conn. 2015). Respectfully, the Court disagrees. In *Martin*, the Connecticut Appellate Court noted that "[i]n *Binette*, the complaint was sustained because of its specific allegations of an unreasonable, egregious search and seizure"; it then proceeded to examine whether the plaintiff's allegations were sufficiently "egregious" to sustain a *Binette* claim. *Martin*, 64 Conn. App. at 440. The Appellate Court ultimately held that a plaintiff's allegations of an unwarranted search and a

21

warranted search premised on false statements in a search warrant affidavit were not sufficiently egregious to authorize a *Binette* action. *Id.* at 440–42. The Connecticut Supreme Court affirmed *Martin*, albeit on other grounds. *Martin v. Brady*, 261 Conn. 372, 374 (2002).

The Court does not have sufficient grounds to believe that the Connecticut Supreme Court would disagree with the Connecticut Appellate Court that egregious police behavior is required to mount a *Binette* claim. *See Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999) (federal courts are bound to apply the law as interpreted by state intermediate appellate courts unless there is persuasive evidence that the highest court of the state would reach a different conclusion); *see also Binette*, 244 Conn. at 50 n.23 (characterizing, in dicta, the police officers' actions there as "egregious misconduct"). Thus, it applies the Connecticut Appellate Court's rule that a plaintiff must allege "sufficiently egregious conduct" to state a plausible *Binette* claim. *Martin*, 64 Conn. App. at 441.

*Martin* suggested that false statements in a search warrant affidavit could be considered sufficiently egregious if there was a "substantial preliminary showing" that they were made knowingly and intentionally, or with reckless disregard for the truth. 64 Conn. App. at 441. Although the plaintiff in *Martin* had not made such a showing, here, the Court has concluded the opposite: Plaintiff has plausibly alleged that Santora misled the judge who issued the warrant through her statement that Plaintiff had ample time to get in his car and leave. The Court thus holds that Plaintiff has plausibly shown the type of egregious conduct that could support a *Binette* claim—at least for purposes of a motion to dismiss. Discovery may reveal that Santora's conduct did not rise to an egregious level, but that is a matter best left for a later stage.

Thus, Plaintiff's state constitutional claim in Count Five survives dismissal.

E.  Count Six: Indemnification

Finally, the Court concludes that Plaintiff's claim of indemnification against the City of Bridgeport must be dismissed.

Conn. Gen. Stat. § 7-465 provides in relevant part that a municipality "shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay . . .  for infringement of any person's civil rights or for physical damages to person or property . . . if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act" of the employee.  Thus, to state a claim against a municipality under Conn. Gen. Stat. § 7-465, the plaintiff must "affirmatively plead and eventually prove that her injuries were not the result of the municipal employee's wilful or wanton act."  *City of Hartford v. Edwards*, 946 F.3d 631, 634 (2d Cir. 2020).  "[W]anton acts are the equivalent of acts done recklessly or with callous disregard," but are not equivalent to acts committed with indifference or negligence to the rights of others.  *City of West Haven v. Hartford Ins. Co.*, 221 Conn. 149, 161 (1992); *Manifold v. Ragaglia*, 94 Conn. App. 103, 115–16 (2006).

Here, the Court has determined that Plaintiff's malicious prosecution claim against Santora may proceed, but Plaintiff concedes his claim of negligent infliction of emotional distress is appropriately dismissed.  The underlying malicious prosecution claim sounds in wanton and willful conduct, as Plaintiff alleges that Santora made false statements and omitted material information in the affidavit, which suggests a reckless disregard for the truth.  Thus, Plaintiff's indemnification claim against the City of Bridgeport must fail.

IV.  **CONCLUSION**

For these reasons, Defendants' motion to dismiss, ECF No. 13, is denied in part and granted in part.  Plaintiff's federal and state claims of malicious prosecution (Counts One and Three) and state constitutional claim (Count Five) may proceed.  Plaintiff's claims for attorney's fees (Count

Two), negligent infliction of emotional distress (Count Four) and indemnification (Count Six), are dismissed.  As the defects in Counts Two, Four, and Six are substantive and better pleading would not cure them, the Court denies leave to amend.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Should Plaintiff wish to file any *nunc pro tunc* motion extending the discovery deadline so that he may engage an expert witness, he shall file a motion demonstrating good cause by **February 19, 2026**.

**SO ORDERED** at Hartford, Connecticut, this 11th day of February, 2026.


   /s/ *Sarala V. Nagala*      
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE